**In re The BASTIAN COMPANY, INC., Debtor.**

**Bankruptcy 83–21071.**

United States Bankruptcy Court, W.D. New York.

Jan. 16, 1985.

Pension Benefit Guaranty Corp. by James Y. Callear, Washington, D.C., for Pension Benefit Guaranty Corp.

Lloyd H. Relin, Rochester, N.Y., for debtor.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor-in-possession[1] made a motion to reject a pension plan as an executory contract under 11 U.S.C. § 365 and for an order permitting the debtor-in-possession to give notice of its intent to terminate the pension plan under the Employee Retirement Income Security Act of 1974 (ERISA), to the extent such notice of intent is necessary, while reserving all rights to contest all claims filed as a result of such termination. The Pension Benefit Guarantee Corporation (PBGC) objected to the portion of the motion requesting permission to reject the pension plan under § 365 on the grounds that ERISA provides the exclusive procedures for terminating a pension plan,

---

**1.** Section 1107(a) of Title 11 gives the debtor-in-possession all the rights and powers of a trustee. Therefore, the word "trustee" may be substitut-ed for debtor-in-possession wherever it appears in this decision.

or in the alternative, if § 365 of the Bankruptcy Code is applicable, the Bastian pension plan is not an executory contract and, therefore, cannot be rejected under § 365.

The Court granted the debtor-in-possession's request for an order permitting the debtor to give notice of its intention to terminate the pension plan under ERISA and reserved decision on the § 365 issue. Memorandums of law were subsequently submitted to the Court and oral argument was heard on August 13, 1984.

The facts are as follows. The Bastian Co. is a custom metal stamping business operating in Rochester, New York. Bastian has had a pension plan since July 1, 1961. The present plan was amended, restated in its entirety, and became effective on January 1, 1976, subsequent to the enactment of ERISA. Bastian filed a voluntary petition in bankruptcy under Chapter 11 on September 30, 1983. Therefore, the 1984 Amendments to the Bankruptcy Code are not applicable to this case. On April 6, 1984, Bastian filed this motion to reject its pension plan as an executory contract under 11 U.S.C. § 365. The PBGC, however, objected to rejection under the Bankruptcy Code.

The first question presented is whether a trustee or debtor-in-possession is prevented from rejecting a pension plan under 11 U.S.C. § 365 because pension plan termination procedures are provided in ERISA.

The second question presented is whether a pension plan is an executory contract and, therefore, subject to rejection under 11 U.S.C. § 365.

The third question presented is whether post-petition performance prevents a portion of the post-petition contract from being defined as executory and, therefore, rejected under 11 U.S.C. § 365.

The PBGC's first contention is that ERISA provides the exclusive procedures for terminating a pension plan and that § 365

of the Bankruptcy Code cannot be applied to pension plans.

There can be no argument with the fact that ERISA §§ 1341 and 1342 provide the normal procedures for terminating a pension plan. ERISA, however, also provides that other federal laws will not be impaired. Section 1144(d) of ERISA reads as follows:

(d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States prohibited. Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 111 [29 USCS § 1031] and 507(b) [29 USCS §.1137(b) ] ) or any rule or regulation issued under any such law.

Accordingly, courts have held that ERISA and other federal laws should be construed as being complimentary to each other and that ERISA should not pre-empt other federal laws. See *Schlansky v. United Merchants and Manufacturers, Inc.,* 443 F.Supp. 1054 (S.D.N.Y.1977); *In re DiPiazza,* 29 B.R. 916, 923 (Bankr.N.D.Ill.1983); *Bonin v. American Airlines Inc.,* 621 F.2d 635 (5th Cir.1980) and *Air Line Pilots Association International v. Northwest Airlines Inc.,* 627 F.2d 272 (D.C.Cir.1980). If the pension plan is found to be an executory contract, section 1144(d) prevents ERISA from impairing the Bankruptcy Code.[2]

The PBGC contends that § 1342(f) of ERISA gives a district court exclusive jurisdiction over the termination of pension plans. Section 1342(f) reads as follows:

(f) Exclusive jurisdiction; stay of other proceedings. Upon the filing of an application for the appointment of a trustee or the issuance of a decree under this section, the court to which an application is made shall have exclusive jurisdiction of the plan involved and its property wherever located with the powers, to the extent consistent with the purposes of this section, of a court of the United

---

**2.** Neither the PBGC nor the debtor's attorney raised the existence of § 1144(d), but instead made other arguments regarding ERISA's exclu-

sivity. Therefore, the Court will address those other arguments despite its belief that § 1144(d) is determinative of the exclusivity issue.

States having jurisdiction over cases under chapter 11 of Title 11 of the United States Code....

First of all, § 1342(f) applies to termination proceedings initiated by the PBGC. In the case at bar, however, Bastian started its own voluntary termination under ERISA § 1341. The PBGC did not start these termination proceedings, nor to this Court's knowledge has it made application for the appointment of a trustee. Secondly, ERISA § 1144(d) which prohibits ERISA's impairment of other federal laws, in this case the jurisdiction of the Bankruptcy Court over proceedings arising in or related to a case filed under Title 11, defeats this argument as well.

The PBGC next contends that rejection of a pension plan in bankruptcy is wholly unnecessary because ERISA permits Bastian to terminate its plan at any time simply by filing a notice of intent to terminate 10 days prior to the date of plan termination. PBGC's counsel at oral argument continued that line of reasoning by saying, "Why does 365 even have to be there?"

■ The assumption or rejection of any executory contract or unexpired lease in bankruptcy is subject to court approval. See *In re R. Hoe & Co., Inc.*, 508 F.2d 1126 (2d Cir.1974) and *In re Whitcomb & Keller Mortgage Co.*, 715 F.2d 375, 11 B.C.D. 909 (7th Cir.1983). The language of § 365 is quite simple. "... the trustee, *subject to the court's approval*, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (emphasis added). If this court holds that the pension plan is an executory contract, not only is ERISA not the exclusive procedure for terminating a pension plan, but instead the language of § 365 prevents a debtor-in-possession or trustee from terminating (i.e. rejecting) or assuming a pension plan without first requesting Bankruptcy Court approval pursuant to 11 U.S.C. § 365.

Even though the PBGC does not recognize the purpose of § 365 in bankruptcy, the United States Supreme Court has stated some of the purposes of reorganization and the rejection of executory contracts in its recent case, *National Labor Relations Board v. Bildisco and Bildisco,* — U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1983). (The Supreme Court held that a collective bargaining agreement could be rejected under § 365 of Title 11 upon an appropriate showing). The court in *Bildisco* said,

> The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. See HR Rep No. 95-595, p 220 (1977). In some cases reorganization may succeed only if new creditors infuse the ailing firm with additional capital. ... a similarly beneficial recapitalization could be jeopardized if the debtor-in-possession were saddled automatically with the debtor's prior collective-bargaining agreement. Thus, the authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.

— U.S. at ——, 104 S.Ct. at 1197, 79 L.Ed.2d at 497.

The PBGC argues that ERISA should apply to the pension plan. The ERISA procedures to terminate a pension plan, however, only apply to active and enforceable pension plans. In *Bildisco*, the Court said:

> While all parties to this case ultimately concede that the Bankruptcy Court may authorize rejection of a collective-bargaining agreement, the Board and the Union nonetheless insist that a debtor-in-possession violates § 8(a)(5) and § 8(d) of the NLRA if it unilaterally changes the terms of the collective-bargaining agreement between the date of filing the bankruptcy petition and the date on which the Bankruptcy Court authorizes rejection of the agreement. But acceptance of such a contention would largely, if not completely, undermine whatever benefit the debtor-in-possession otherwise obtains by its authority to request rejection of the agreement. [— U.S. at ——, 104 S.Ct. at 1198,] 79 L.Ed.2d at 497.

The necessary result of the foregoing discussion is that the Board is precluded from, in effect, enforcing the contract terms of the collective-bargaining agreement by filing unfair labor practices against the debtor-in-possession for violating § 8(d) of the NLRA. Though the Board's action is nominally one to enforce § 8(d) of that Act, the practical effect of the enforcement action would be to require adherence to the terms of the collective-bargaining agreement. But the filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again. Consequently, Board enforcement of a claimed violation of § 8(d) under these circumstances would run directly counter to the express provisions of the Bankruptcy Code and to the Code's overall effort to give a debtor-in-possession some flexibility and breathing space. See HR Rep No. 95–595, p 340 (1977). We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d). Cf. *Allied Chemical Workers*, supra [404 U.S.], at 187, 30 L.Ed.2d 341, 92 S.Ct. 383; *Dowd Box Co. v. Courtney*, 368 U.S. 502, 510–513, 7 L.Ed.2d 483, 82 S.Ct. 519 (1962), [—— U.S. at ——, 104 S.Ct. at 1199,] 79 L.Ed.2d at 499.

By applying the Supreme Court's reasoning in *Bildisco* to the pension plan in the case at bar, as of the date of the filing of the petition in bankruptcy, the Bastian pension plan is not an enforceable contract and, therefore, the termination procedures in ERISA are not applicable. The Supreme Court recognized that rejection of an executory contract is necessary to relieve the debtor from obligations which would prevent a successful reorganization. Bastian clearly views the pension plan and PBGC's administrative expense claims as a threat to successful reorganization and seeks to reject the pension plan.

The fact that a pension plan is rejectable under 11 U.S.C. § 365 notwithstanding termination procedures in ERISA does not mean that ERISA is inapplicable to pension plans of employers in bankruptcy. Only the ERISA provisions which conflict with 11 U.S.C. § 365 are affected. Therefore, ERISA is not the exclusive means to terminate a pension plan and § 365 of Title 11 applies to pension plans of employers in bankruptcy.

The PBGC's next contention is that even if ERISA is not the exclusive means to terminate a pension plan and § 365 of the Bankruptcy Code is applicable, that the Bastian pension plan is not an executory contract and, therefore, a motion to reject under 11 U.S.C. § 365 is not proper because § 365 only applies to executory contracts.

The Bankruptcy Code does not define "executory contract". The legislative history, however, indicates that Congress intended executory contracts to include those contracts "on which performance remains due to some extent on both sides." H.R. Rep.No. 595, 95th Cong., 1st Sess. 220 (1977) reprinted in 1978 U.S. Code Cong. Ad.News 5787, 5844. Additionally, Professor Vern Countryman's article Executory Contracts in Bankruptcy: Part 1, 57 Minn. L.R. 439, defining executory contracts has been cited by many courts. Professor Countryman defines an executory contract as a contract:

> under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other. 57 Minn.L.R. at 460.

In this case, as of the time of the filing of the petition the employees were obligated to work for the employer until their retirement and the employer was obligated to provide continuous and ongoing periodic contributions to fund the pension plan. If the employees stopped working that would excuse the employer from contributing to the pension plan and if the employer stopped contributing to the pension plan

that would excuse the employees from working. Therefore, the failure of either party to continue their obligations would constitute a breach of their contracts excusing the other party from performance. The Bastian pension plan with its material ongoing mutual obligations fits into Professor Countryman's and the legislative history's definition of an executory contract.

Other courts have held pension plans to be executory contracts rejectable in bankruptcy. See *In re American R. Co. of Porta Rico*, 110 F.Supp. 45 (D.P.R.1952) *aff'd.* 202 F.2d 149 (1st Cir.1953) and *In re Alan Wood Steel Co.*, 4 B.C.D. 850 (Bankr. E.D.Pa.) *aff'd*, 449 F.Supp. 165 (E.D. Pa.1978).

■ Additionally, the Supreme Court in *Bildisco* said that the language of § 365:

by its terms includes all executory contracts except those expressly exempted, and it is not disputed by the parties that an unexpired collective-bargaining agreement is an executory contract. Any inference that collective-bargaining agreements are not included within the general scope of § 365(a) because they differ for some purposes from ordinary contracts, see *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, 11 L.Ed.2d 898, 84 S.Ct. 909 (1964), is rebutted by the statutory design of § 365(a) and by the language of § 1167 of the Bankruptcy Code. The text of § 365(a) indicates that Congress was concerned about the scope of the debtor-in-possession's power regarding certain types of executory contracts, and purposely drafted § 365(a) to limit the debtor-in-possession's power of rejection or assumption in those circumstances. Yet none of the express limitations on the debtor-in-possession's general power under § 365(a) apply to collective-bargaining agreements. Section 1167, in turn, expressly exempts collective-bargaining agreements subject to the Railway Labor Act, but grants no similar exemption to agreements subject to the NLRA. Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this

instance indicates that Congress intended that § 365(a) apply to all collective-bargaining agreements covered by the NLRA. [— U.S. at ——, 104 S.Ct. at 1194–95,] 79 L.Ed.2d at 492–93 (footnote omitted).

Similarly, there is no provision in the Bankruptcy Code excluding pension plans from § 365. Therefore, pension plans are rejectable as executory contracts under 11 U.S.C. § 365 and the Bastian Company's motion to seek Court approval to reject their pension plan under § 365 is proper.

The foregoing does not completely dispose of the issues presently before the Court. The PBGC contends that even if the pension plan is found to be an executory contract, Bastian cannot reject that portion of the contract for post-petition services rendered by the employees because that portion of the contract is no longer executory. To support their position, the PBGC cites *In re Alan Wood Steel Co.*, 4 B.C.D. 850 (Bankr.E.D.Pa.) *aff'd*, 449 F.Supp. 165 (E.D.Pa.1978). In *Alan Wood Steel*, the Court held that a pension plan could be rejected under § 365, but that benefits which had accrued post-petition could not be rejected as executory. The Court reasoned that the employees had already performed their obligations by working and all that remained to be done was for the employer to contribute to the pension plan. Therefore, no mutual obligations existed and that portion of the contract was no longer executory. 4 B.C.D. at 860.

The Supreme Court, however, said, "But the filing of the petition in bankruptcy means that the collective bargaining agreement is no longer immediately enforceable, and may never be enforceable again." —— U.S. at ——, 104 S.Ct. at 1199, 79 L.Ed.2d at 499. The Court also said, "We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d)." —— U.S. at ——, 104 S.Ct. at 1199, 79 L.Ed.2d at 499. Prior to the Supreme Court's decision in *Bildisco*, many courts had similarly held that the appropri-

ate time for determining whether a contract is executory and, therefore, rejectable is as of the date of filing the petition in bankruptcy. See *In re California Steel Co.*, 24 B.R. 185, 10 B.C.D. 512 (Bankr.N.D. Ill.1982); *In re Coast Trading Co. Inc.*, 744 F.2d 686, 692 (9th Cir.1984); *In re Newcomb*, 744 F.2d 621, 624 (8th Cir.1984); *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443, 9 B.C.D. 14 (Bankr.E.D.Ca.1982); *In re Rovine Corp.*, 6 B.R. 661, 6 B.C.D. 3 C.B.C.2d 114 (Bankr.W.D.Tenn.1980).

"For example, it was said that a contract for the purchase of a shopping center was executory for purposes of former 11 U.S. C.S. § 516(1) and that the vendors who completed their performance by the time the trustee had filed for an Order directing the rejection of the contract, had proceeded with performance at their own risk, and could not raise their completion of performance as an argument to prevent rejection." 9A Am.Jur.2d 49 citing *In re American National Trust*, 426 F.2d 1059 (7th Cir. 1970).

Additionally, the Supreme Court in *Bildisco* said:

In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time. 11 U.S.C. § 365(d)(2). In contrast, during a Chapter 7 liquidation the trustee has only 60 days from the order for relief in which to decide whether to accept or reject an executory contract. 11 U.S.C. § 365(d)(1). It seems to us that this difference between the two types of proceedings reflects the considered judgment of Congress that a debtor-in-possession seeking to reorganize should be granted more latitude in deciding whether to reject a contract than should a trustee in liquidation. —— U.S. at ——, 104 S.Ct. at 1198, 79 L.Ed.2d at 497.

█ Following the U.S. Supreme Court's interpretation of executory contracts in *Bildisco*, the Bastian employees perform-

ance after the filing of the petition in bankruptcy does not prevent any portion of the post-petition contract from being defined as executory. Therefore, if this Court approves the rejection of this pension plan under 11 U.S.C. § 365, such rejection will relate back to the time the petition in bankruptcy was filed.

The fact that the debtor may be allowed to reject the pension plan as of the date of the filing of the petition does not prevent the employees or the PBGC from filing claims for post-petition services rendered or contributions owing. 11 U.S.C. § 502(g). The issue of how those claims will be treated, however, is not currently before this Court and, therefore, will not be decided at this time. If the PBGC or any other party to an unassumed executory contract in a Chapter 9, 11, or 13 wishes to reduce the risk of losses as a result of post-petition performance, that creditor should make a motion under § 365(d)(2) requesting that the trustee assume or reject the executory contract within a specific period of time.

For the foregoing reasons, it is decided that: ERISA is not the exclusive means for terminating a pension plan; 11 U.S.C. § 365 applies to pension plans of employers in bankruptcy and, therefore, Bastian's motion to reject the pension plan under § 365 is proper; the Bastian pension plan is an executory contract rejectable under 11 U.S.C. § 365, subject to this Court's approval; and further, if approved, such rejection will relate back to the time of the filing of the petition in bankruptcy and it is so ordered.